We're into the third case on our calendar, Eric Caren v. Harry Collins Jr. et al. Eric Caren v. Collins Jr. et al. Good morning, your honors. Philip Oswald on behalf of the appellants in this case, Mr. Eric Caren and Caren Archive, may it please the court. Mr. Caren will rely primarily on the brief submitted to the court. However, I'd like to use my time here today to accomplish two objectives. One— Before you get into that, I have a question about your pleading of diversity jurisdiction. Yes, your honor. There are no allegations in the complaint with respect to anybody's citizenship. There are allegations with respect to residents of plaintiff and the individual defendants, but not citizenship. Your honor, respectfully, I believe that the—and again, I wasn't Mr. Caren's counsel in the underlying proceedings, but I believe that was never raised as an issue. Understandably, this court— We have the obligation to raise, so respond to the issue of whether there's federal jurisdiction. Understandably, your honor. So you don't have any information for us on citizenship? Your honor, I believe that the residency allegations were relied on, and that Mr. Caren and Caren Archives are New York corporations, and the Brown brothers are all—and the individual defendants are all Pennsylvania residents, and they're Pennsylvania citizens, excuse me. And this case obviously involves a $5 million deal, so the monetary amount is matched, but I believe that the lower court relied on the allegations of residency. Are the—well, I assume so because there was no allegation of citizenship. What about the citizenship of the limited partnership? The limited partnership, I believe the defendant, your honor, was a Pennsylvania partnership. Caren Archive, I believe, is a New York corporation. Do you know how the citizenship of a limited partnership is supposed to be determined? I believe by the citizens of the partners, your honor. Yes, and are all of the individual defendants all of the partners of this partnership? Your honor, based on my understanding of the record and my conversations with my client, your honor, and the arguments below, I believe that all of the defendants are Pennsylvania citizens, the individual defendants, your honor. It may be that later today you receive—you should both be on the lookout on your computers for a possible order which would ask you to address these questions, these threshold questions of jurisdiction, and we may require you to submit affidavits regarding the matter. Of course, your honor. We will gladly do so. I would like to, of course, answer any questions, any other questions that this court has, but I'd also like to provide a broader perspective on the narrative that Mr. Caren alleges is laid out by the statements and the complaints, a broader story that may be lost in the analytic intricacies of the briefs. Of course, as this court knows, this story must be viewed through the lens of three general rules. First, that all factual allegations in the complaint must be assumed as true. Second, that Mr. Caren must be afforded all reasonable inferences that can be drawn from the complaint. And lastly, that this court can rely on judicial experience and common sense when making its determination. Now, this action involves a proverbial deal gone wrong. The allegations and the complaints Mr. Caren contends easily infer that after receiving a free appraisal, a free endorsement, and free publicity from a well-known, prominent art dealer, Mr. Caren, the defendants basically cut him out of the deal by refusing to communicate with him, which is an important point. It wasn't only refusing to communicate with potential buyers, but also refusing to communicate with him, by refusing to communicate with potential buyers as well, as I indicated, and by ultimately selling the collection without paying Mr. Caren's fee, which Mr. Caren alleges violated the brokerage agreement, because those buyers were introduced to the- Is there an allegation that Mr. Caren actually was able to find a viable purchaser and actually did find a viable purchaser? Judge, we believe that- First, I think that's a yes or no question, then you can answer the rest. Admittedly, Your Honor, whether specifically viable, no, Your Honor. That word is not used in the complaints. However, what a viable purchaser is we would respectfully submit as a question of fact that just can't be resolved by this court on a motion to dismiss or the district court, Your Honor. Well, viable, the contract refers to a viable potential purchaser. Yes, Your Honor. We did allege that we brought a bona fide purchaser. What's the difference between a bona fide purchaser and a viable potential purchaser? Respectfully, Your Honor, Mr. Caren would contend that there is no difference, that the two are interchangeable. But we did allege that, and then after, including alleging that we immediately took those steps to bring purchasers to the defendants and to lay the foundation for a deal, then the defendants cut off all communications and refused to reply again to Mr. Caren and to potential buyers. And this is all clearly alleged in the complaints. And the trial court respectfully misapplied the pleading standard by holding that we need to allege a specific date, a specific buyer, a specific location, and specific terms and other specifics of an ultimate deal that occurred. Simply put, based on the specific case law that addresses this particular issue, we contend that merely alleging how the contract was breached, and that's more than just alleging that the defendants breached their contractual obligations, which is admittedly a generic, nonspecific, arbitrary allegation. Here there's much more. We allege how they breached the contract. We allege that they cut off all communications with us, with potential buyers. We allege that they ultimately sold the collection without paying us our fee. And, again, those allegations are pled, and we believe that under the case law and under the pleading standard, even after Twombly and Iqbal. Doesn't the contract here in essence require that Brown Brothers not participate in the negotiation? Doesn't it say in one of these paragraphs, and all negotiating will be done with the potential purchasers through Karen exclusively? Yes, Your Honor, and I'm glad you asked that. It is a crucial fact. We contend here that an interpretation that that clause of the contract is overly inclusive, that all communications does not necessarily equate to negotiations. Yes, the defendants could not negotiate. However, holding that they could not communicate in any way not only with the potential buyers but also with my clients just ignores the practical realities of a sale like this, Your Honor. Realistically, a $5 million sale of vintage photographs would require showings, appraisals, other interaction between my clients and potential buyers. Now, my client never had physical possession of the photographs, so he couldn't arrange those inspections. He needed to communicate with the defendants. Every contract cannot specifically spell out all of those little practical nuances of how the deal is going to get done. And respectfully, Your Honor, we believe that the mere prohibition on negotiating a sale exclusive of Mr. Karen is not the equivalent of not being able to communicate at all, including responding to communications about the sale. Thank you, Your Honors. Thank you. You've reserved some time. Yes, Your Honor. We'll hear from Mr. Fallon. Thank you. May it please the Court. My name is David Fallon, and I represent the appellees Harry B. Collins, Raymond A. Collins, Meredith Collins-Applegate, and Brown Brothers, LLP. Both the complaint and the proposed amended complaint failed to state a claim, and the District Court appropriately dismissed the complaint in all respects and denied leave to amend as futile. As Counselor Karen outlined, there are three separate contract claims at issue in this case. There's the breach of duty of good faith, there's the alleged violation of the exclusivity provision, and there's the alleged unilateral abrogation of the agreement. I'd like to first address the good faith claim, then address the issues of abandonment and waiver, finally address the merits of Claims 2 and 3, and then last, address the request to challenge the denial of leave to re-plead. First, with respect to the covenant of good faith and fair dealing, as our brief sets forth, Pennsylvania law is very clear that under Pennsylvania law, the covenant of good faith and fair dealing is to be narrowly construed. It attaches only to existing contractual obligations, and it does not add new duties. In this case, there was absolutely no provision of the contract that required, much less contemplated, that Brown Brothers would communicate with potential purchasers. Accepting that allegation as true, and what counsel noted was that, noted a term that stated Karen would conduct the negotiations exclusively, but that's not the only term. There's also a term in the contract that expressly forbids Brown Brothers for communicating with potential purchasers, both during the term of the contract and for a period of two years following the contract. As we note in our brief, so it's not just that Karen is asking this court to find a duty of good faith. Are you referring to Paragraph 6? Is that deemed proprietary to Karen language? No. What are you referring to? Yes, yes, I apologize, it is. Yes, and the following sentence. Where is that to be found? This is page 18 of the appendix. Okay. And the very top of the page, from 17 into 18, for the term of this agreement and for a period of two years after this agreement terminates, during which time Brown shall not contact, directly or indirectly, or re-enter any negotiations with any potential purchasers introduced to Brown by Karen. So we submit that they're not just asking this court to read in a duty of good faith that's not tied to a specific contractual term, but they're asking this court to recognize a duty of good faith that, in fact, expressly overrides a contractual term. And we don't believe that's cognizable under Pennsylvania law. Turning to Claims 2 and 3, the alleged violation of the exclusivity provision and the alleged unilateral abrogation of the agreement, the district court dismissed those claims on alternate grounds. First, the district court found that Karen's counsel in the district court had willfully failed to oppose dismissal of those claims. And as such, the district court deemed them effectively abandoned or conceded. Accordingly, there was that first basis for dismissal. The district court also dismissed them by indicating even if these claims had not been abandoned, they still would not fail to state a claim. And it's our position, as indicated in the briefs, that we don't believe that that issue was addressed in the opening brief, and we don't believe that circumstances exist to prevent a manifest injustice to excuse that waiver. Can you just provide me with some context here, just broadly? Why is it that Brown Brothers would agree to a scenario where it could not, the Brown Brothers could not, at any point, talk to a potential purchaser? What's in it for Brown Brothers? Well, I think the natural, my natural reading of it is that it was placed in there to protect Karen, that these were, the communications would flow through him, that he was the broker, and that he would be the one who would be communicating with these buyers. But at some point, doesn't it make sense for the Brown Brothers to want to see who the potential, or viable, or taught to communicate with the potential buyer? I don't particularly think so. I think at the end of the day, the contract . . . We're talking about a lot of money. Yeah, but the contract's very clear in terms of what Karen has to do. Originally, it was $9 million. After Karen appraised it, my clients agreed to lower the reserve price to $5 million. So, really, so long as that deal is consummated for $5 million, Karen had the discretion to conduct the negotiations, and as the contract notes, engage the parties in a bidding war to get the highest amount he could above $5 million, and then he would get 20 percent of that fee. All right. It just doesn't make complete business sense to me, but you can . . . I would . . . Language is what it is. Yeah, I would agree that it's certainly . . . I don't know completely what was in their head when it was all being negotiated. Turning to the merits of the violation of the exclusivity provision, that is insufficiently pled. Even if the court finds that it was not abandoned, and that the waiver of not raising that should be excused, we believe that that is pled in a wholly conclusory manner upon information and belief, as the district court found. There's no supporting factual allegations to make that claim plausible. And while certainly I think this court has recognized that under circumstances, there can be these pleadings made upon information and belief, there's been required to be factual support for that information and belief so that it's not simply speculative. And with respect to some of the arguments in the reply brief, that Brown Brothers has passively conceded that a sale occurred by not submitting affidavits, we believe that this court's precedent is very clear that had we submitted an affidavit to the court contesting this, that the court would have erred if they had considered it. That is the only reason that an affidavit was not submitted. And while we submit that this matter should not be remanded, if this matter is remanded, that's precisely the position that Brown Brothers will take, is that no sale occurred. But just as that was not relevant for the district court, it's certainly not relevant for this court as well. No affidavit was submitted because none could be considered. And the issue is whether the complaint- Do you have any further response to Judge Kearse's questions about our jurisdiction? I do not. Judge, I can tell you that the limited liability partnership is in Pennsylvania, and I would- Are the individual defendants the only members of the partnership? There is, I believe, one other member of the partnership who is not named, Judge, but I would- Do you have any idea of what state he is a citizen of, he or she? At the time, I would have to confirm that. I don't have that information, unfortunately. Turning- On that point, just as an administrative matter, if and when we issue an order asking for affidavits or further information, I'm not saying we will, but if we do, perhaps you can cooperate with opposing counsel in the preparation of one or more affidavits which would survey all of the parties to the action. Certainly, Your Honor. Thank you. Turning to the- I see I'm running low on time. I'd like to address the argument that was made on page 34 of the appellant's brief that this matter should be modified to be- that the decision should be granted with leave to replead. For the reasons that we cite at pages 32 to 34 of our brief, the district court appropriately found that granting leave to replead in this case would be futile. We've been provided with no facts, either in the district court or on appeal, that would show how these deficiencies can be cured. As the Mortimer case makes clear that we cited, which is squarely on all fours, that case was dismissed without leave to replead. The appellants at the district court moved to amend the judgment under Rule 59E, saying this dismissal without leave to replead was an error, and they provided a proposed amended complaint. The district court found that because it would have been futile, that the judgment should not be modified. So we believe that it's squarely on all fours, and we would request that the district court decision be affirmed in all respects. Thank you. Mr. Armstrong, you've reserved some time. Thank you, Your Honor. Yes, I'd like to address some points made by counsel. First, with respect to the good faith claim and the necessity for a specific duty to be linked to that claim, first of all, I wanted to point out that it's somewhat illogical to argue that that specific duty has to be identical to the conduct that is the basis of the good faith claim, because then there would be no need for the good faith claim. You would just allege a breach of contract. So here, for instance, we allege that the defendants breached the duty of good faith by cutting off all communications with, in addition to us, potential buyers. The defendants raised the argument that no specific contractual provision required them to communicate with. Well, no. They make the more powerful argument that there is a specific contractual provision that prohibits them from communicating. Sure, Your Honor. And again, that is absolutely an important point. But that contractual provision, when read, it seems to suggest that, obviously, one, is protecting Mr. Caron's rights, proprietary rights, which I think opposing counsel acknowledged himself. And two, it seems to suggest that it prohibits affirmative contact. Now, if it's a breach of Mr. Caron's rights, Mr. Caron is fully able to waive those rights and then reaffirm the contract. So even if that is the instance, it's within Mr. Caron's purview to continue on with the contract, even if it was breached in that respect. Secondly, Your Honor, that provision cannot be read so broadly as to completely make impossible a sale. If the defendants don't have to communicate with potential buyers, that doesn't even address not communicating with the broker who's supposed to be the conduit for these communications and negotiations. If you can't communicate with potential buyers, then they cannot just line up practical, logistical necessities of a sale of this scale. They have possession of the collections, by they I mean the defendants. They have control of when inspections occur, of when appraisals occur, of when other showings occur. So that provision of the contract seemingly seems to suggest that the defendants cannot affirmatively contact other potential buyers. But read in the context of the larger picture, we argue that Mr. Caron can waive that, and that that just would ignore the practical realities of the sale. And lastly and briefly, Your Honors, there's two specific contract provisions, which is one, the contract contemplates that buyers would be brought to the defendants and would be introduced to the defendants, that 100% in our view contemplates that the defendants would ultimately have to communicate with potential buyers in some way, shape, or form. And lastly, the benchmark decision supports that the frustration of a brokerage agreement supports that claim. Thank you, Your Honors. Thank you very much, Mr. Othwell. Thank you both for good arguments, and we'll